UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NOAH POLEGA,

                Plaintiff,

v.                                        Case No. 17-cv-757-pp

M. BLOCK, RN; C. MARCHANT, HSM;
NURSE LARSON, RN/NP;
BRIAN FOSTER, WARDEN;
DR. GROSSMAN, MD;
JOHN DOE #1, MD;
JANE DOE #2, HSU STAFF;

                Defendants.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 9), ALLOWING THE PLAINTIFF TO FILE AN AMENDED COMPLAINT, SCREENING THE AMENDED COMPLAINT (DKT. NO. 15), DENYING AS MOOT THE SECOND MOTION TO PROCEED WITHOUT PREPAYING THE FILNG FEE (DKT. NO. 16)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. Under that law, the court must screen the plaintiff's complaint to determine whether the plaintiff states claims with which he may proceed. In addition to filing a complaint, the plaintiff filed a motion for leave to proceed without prepayment of the filing fee. Dkt. No. 9. This decision will screen the plaintiff's amended complaint and resolve the plaintiff's motions.

1

### I. Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. Nos. 9, 16)

The PLRA provides that a court may allow an incarcerated plaintiff to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b).

On July 19, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $18.70. Dkt. No. 11. The court received $19.00 from the plaintiff on August 8, 2017. Accordingly, the court will grant the plaintiff's motion to proceed without prepayment of the filing fee. The court will order the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this decision.

The plaintiff also has filed a second motion for leave to proceed without paying the filing fee. Dkt. No. 16. The court will deny this motion as moot, because the court has granted his first motion.

### II. Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed on a claim that his civil rights were violated under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  The Plaintiff's Allegations

The plaintiff filed his original complaint on May 30, 2017. Dkt. No. 1. On May 3, 2018, he filed a notice of proposed amended complaint. Dkt. No. 13. He asked the court not to screen the original complaint. Id. On May 23, 2018, the court received the plaintiff's proposed amended complaint. Dkt. No. 15. Because the court had not yet entered an order screening the original complaint, the court will allow the plaintiff to file the amended complaint. The amended complaint will act as the operative complaint in the case, and the court will screen that complaint.

The plaintiff asserts that for the past ten years, he's suffered from chronic shoulder pain that results from an old injury. Dkt. No. 15 at 1. On October 14, 2016, the plaintiff transferred to Waupun Correctional Institution (WCI). Id. at 2. Two days later, he submitted a health services request (HSR) complaining that he was unable to sleep because of severe pain in his left shoulder. Id. Four days later—on October 20, 2016—Nurse Larson examined the plaintiff based on his complaint. He asked Larson if she could give him a lower bunk bed restriction—he was having trouble climbing onto the top bunk, and this was causing more severe pain. Id. Larson refused. Id.

About three weeks later, on November 19, 2016, the plaintiff wrote another HSR to the health services unit (HSU). This time, he complained about the delay in getting an MRI, which he asserts that he was supposed to get "awhile ago." Id. He told the HSU that his pain was unbearable, that the Tylenol and Naproxen were "inefficient" or "ineffective," that climbing into the top bunk was a "chore," and that he could barely lift a cup at times. He asked the HSU to speed up the process. Id.

The next day, defendant Jane Doe #2 (a member of the HSU staff) told the plaintiff that he had an MRI scheduled for the next month, "sooner date await." Id. The plaintiff asserts that this prolonged his pain for no reason—he should have been evaluated and treated right away. Id.

A month or so later, on December 12, 2016, the HSU nursing staff saw the plaintiff. Id. But they didn't offer him any medication for the pain. Later that day, defendant Block, a registered nurse, saw the plaintiff. Id. He asked

4

Block for a lower bunk restriction, and explained why he needed it. Id. Block denied the request and just gave him a sling. Id. at 3. Block also denied him any effective pain medication, despite his report of continued pain. This increased the plaintiff's discomfort. Id.

A couple of days later, "an examination and MRI findings revealed" that the plaintiff had

> Grossly located glenohumeral join with mild posterior decentering; Small amount of joint fluid present; Increased within the SA-SD bursa; Supraspinatus, intraspinnatus and subscapularis tedinosis. Partial-thickness insertional foot print tear of the anterior margin of the supraspinatus.

Id. That same day, the plaintiff received a memo from Warden Foster (responding to a December 11, 2016 complaint of pain.) Foster told the plaintiff that health-related complaints should be addressed to the HSU, not the warden. The plaintiff asserts that the warden did not address his complaints about the HSU refusing to provide him the care he'd requested. Id. The plaintiff asserts that this response was unreasonable, and that Foster should have investigated his complaint. Id.

The plaintiff also alleges that Dr. Grossman, HSM Marchant and John Doe #1 MD denied him medical care by failing to resolve his complaints about not getting a lower bunk restriction. Id. at 3-4.

On January 11, 2017, Nurse Block saw the plaintiff in the HSU. Id. at 4. He complained again about the fact that the pain medications weren't working, and explained that that was partly because he was having to climb up to the

top bunk with an injured shoulder. Id. Block again denied his request for a lower bunk restriction. Id.

Ten days later, the plaintiff write to HSU, complaining of the severe pain; he described it as often shooting down his arm, and into his hand. Id. He expressed his frustration, and said that he needed effective pain medication. Id. The HSU, however, did not provide him with anything. Id. The plaintiff also alleges that the HSU denied him prompt medical treatment, because it took them months to refer him to an orthopedic surgeon and schedule him for an appointment. Id. He argues that these delays prolonged his pain. Id.

On January 27, 2017, the plaintiff filed an inmate grievance regarding all of these issues. Id. The inmate complaint examiner contacted HSM Marchant, but Marchant responded only about the medical care the plaintiff was receiving, not about the denial of his lower bunk restriction request. Id.

B. The Court's Analysis

The plaintiff asks to proceed against Block, Marchant, Larson, Foster, Grossman, John Doe #1 MD and Jane Doe #2 HSU on a claim that they were deliberately indifferent to his serious medical need. He also asks to proceed against Block, Marchant, Larson, Foster, Grossman, John Doe #1 and Jane Doe #2 for denying him the lower bunk restriction that he'd repeatedly requested. Id. at 5.

Prison officials violate the Eighth Amendment when they know of a substantial risk of serious harm to inmate health or safety and they either act, or fail to act, in disregard of that risk. Farmer v. Brennan, 511 U.S. 825, 832

6

(1994); Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). "A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). For a plaintiff to satisfy the objective component, he has to show that his medical condition is "objectively, sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." Id. (citation omitted). The subjective component requires a plaintiff to show that "prison officials acted with a '"sufficiently culpable state of mind."'" Id. (quoting Farmer, 511 U.S. at 837). "The officials must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of harm exists' and 'must also draw the inference.'" Id.

The court will assume for the purposes of screening the amended complaint that the plaintiff's shoulder injury, and the pain it caused, constituted a serious medical need.

### 1. Nurse Block

The plaintiff alleges that Nurse Block saw him on two different occasions—December 12, 2016 and January 11, 2017. On both occasions, he told her how much pain he was in, and particularly explained to her that having to climb up and down to and from the upper bunk was exacerbating that pain. He asked both times for a lower bunk restriction; Block denied his

7

requests. While the fact that a plaintiff disagrees with a medical professional's judgment does not constitute deliberate indifference, see Greeno, 414 F.3d at 653, the court concludes that at this early stage, the plaintiff has stated sufficient facts to allege that Block showed deliberate indifference when she refused to grant the plaintiff a lower bunk restriction.

        2.      HSM Marchant

The plaintiff makes two vague allegations against HSM Marchant. First, he generally asserts that Marchant was deliberately indifferent for not resolving his issues with the HSU. He also alleges that the inmate complaint examiner contacted Marchant about the plaintiff's grievance, but that Marchant just responded by discussing his medical care. This is not enough to state a claim for deliberate indifference. The plaintiff does not allege that Marchant had any personal involvement in denying him a lower bunk restriction or pain medication. The plaintiff appears to have sued Marchant because of Marchant's status as the manager of the HSU. But a plaintiff cannot sue a supervisor for the conduct of the supervisor's subordinates under §1983; to sue on a theory of supervisory liability, the plaintiff must show that "the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001) (citing Lanigan v. Vill. of E. Hazel Crest, Ill., 110 F.3d 467, 471 (7th Cir. 1997)). The plaintiff has not alleged any facts to show that Marchant knew of any misconduct by HSU staff and approved it. The court will dismiss Marchant as a defendant.

###    3. Nurse Larson

The plaintiff alleges that on October 20, 2016, Larson examined him (shortly after he arrived at the institution). He says that he asked her for a lower bunk restriction, and she refused. While this is a close question, at this early stage, the court will allow the plaintiff to proceed on a deliberate indifference claim against Larson.

###    4. Warden Brian Foster

The plaintiff alleges that Warden Foster responded to a complaint that the plaintiff made about his pain. Foster told the plaintiff that if he had a complaint about medical treatment, he should address that complaint to the HSU. The plaintiff alleges that this response was "unreasonable," and that Foster (as warden, presumably) should have investigated. As the court already has noted with regard to Marchant, a plaintiff cannot sue a supervisor because of his subordinate's misconduct. Perhaps more to the point, Foster was not a medical professional. Non-medical officials cannot be held liable for deliberate indifference when the plaintiff is under the case of medical professionals. See Greeno, 414 F.3d 656; Hernandez v. Keane, 341 F.3d 137, 148 (2d Cir. 2003); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). The court will not allow the plaintiff to proceed against Foster.

###    5. Dr. Grossman

The court will not allow the plaintiff to proceed against Dr. Grossman. He does not explain what Dr. Grossman's role was at the institution. He does not allege that Dr. Grossman ever saw him or treated him. He does not allege that

9

Dr. Grossman was involved in any way, other than to say that Grossman did not act to resolve his complaints. As with Marchant, the court will dismiss Dr. Grossman as a defendant.

6. John Doe #1 MD

The plaintiff's claim against John Doe #1 MD is the same as his claim against Grossman, and the court will not allow him to proceed on that claim.

7. Jane Doe #2 HSU

Finally, the court will not allow the plaintiff to proceed against Jane Doe #2 HSU. The plaintiff alleges only that Jane Doe #2 told him, when he visited the HSU on November 20, 2016, that he had an MRI scheduled later in the month. This is not enough to state a claim for deliberate indifference.

The court notes that the plaintiff's amended complaint makes many allegations against the HSU as a unit. He complains of frequently telling the HSU about his pain, and of the HSU failing to provide him with treatment and failing to address his needs. The plaintiff cannot sue the HSU for civil rights violations, however. He must identify those specific individuals who were deliberately indifferent to his medical needs. Based on the allegations in the amended complaint, those individuals are Nurses Block and Larson.

III. **Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 9.

The court **ALLOWS** the plaintiff to file an amended complaint. The court **ORDERS** that the clerk's office shall docket the proposed amended complaint, dkt.no. 15, as the operative complaint in the case.

The court **DENIES AS MOOT** the plaintiff's second motion to proceed without prepaying the filing fee. Dkt. No. 16.

The court **DISMISSES** defendants Marchant, Foster, Grossman, John Doe #1 MD and Jane Doe #2 HSU.

The court **ORDERS**, under an informal service agreement between the Wisconsin Department of Justice and this court, the clerk's office to electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Block and Larson.

The court **ORDERS**, under the informal service agreement between the Wisconsin Department of Justice and this court, that defendants Block and Larson shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $331.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state

or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will mail a copy of this order to the warden at Waupun Correctional Institution.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, the court will require him to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss his case for failure to prosecute.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The parties shall notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 13th day of June, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**