UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NOAH POLEGA,

                      Plaintiff,

v.                                           Case No. 17-cv-757-pp

MELISSA BLOCK,
and DONNA LARSON,

                      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 29) AND DISMISSING CASE**

---

Plaintiff Noah Polega, a former Wisconsin state prisoner who is representing himself, filed this civil rights case under 42 U.S.C. §1983. He alleges that the defendants refused to give him a lower bunk bed restriction despite his injured shoulder, in violation of the Eighth Amendment to the United States Constitution. Dkt. No. 1. The defendants have filed a motion for summary judgment. Dkt. No. 29. The court grants the motion and dismisses the case.

**I.    Facts**

During the events described in the complaint, the plaintiff was an inmate at the Waupun Correctional Institution. Dkt. No. 32 at ¶1; Dkt. No. 42 ¶1. Defendants Donna Larson and Melissa Block worked at Waupun as Nurse Clinicians 2. Dkt. No. 32 at ¶¶2, 3; Dkt. No. 42 at ¶¶2, 3.

When inmates enter Waupun, they receive an inmate handbook informing them that if they require non-emergency medical attention, they

1

must submit a Health Services Request (HSR) to the Health Services Unit (HSU). Dkt. No. 32 at ¶4. HSU nurses receive inmates' HSR forms and triage the requests to determine the appropriate action. Id. at ¶5.

As nurses, defendants Larson and Block have the authority to provide interventions in accordance with nursing protocols, if medically indicated. Id. at ¶7; Dkt. No. 42 at ¶4. Nurses can provide appropriate interventions for shoulder pain, including acetaminophen, ibuprofen, ice, analgesic balm, temporary lower bunk restriction in case of acute injury or postoperative, exercises or stretches and activity restrictions. Dkt. No. 32 at ¶7; Dkt. No. 42 at ¶4. Under Health Services Policies and Procedures 300:07, Appendix 1: Restrictions/Special Needs, a nurse or prescriber can authorize a temporary lower bunk restriction for any inmate suffering from any of the following: acute injury, significant functional limitations in mobility secondary to arthritis, musculoskeletal disorders or neurological disorders, significant symptomatic cardiovascular disease, obesity with a Body Mass Index greater than 40 and significant mobility issues present, elderly, postoperative, seizure diagnosis, pregnancy or blindness. Dkt. No. 32 at ¶8.

A.   The Plaintiff's October 20, 2016 Visit with Nurse Larson

On October 16, 2016, the plaintiff submitted an HSR regarding his left shoulder pain and asking to be seen. Id. at ¶9; Dkt. No. 42 at ¶5. The HSR stated that the plaintiff had been dealing with his left shoulder pain for years, was seeing HSU at Oshkosh Correctional Institution, had not had a follow-up

since his cortisone injection, was in severe pain each day and had trouble sleeping. Dkt. No. 32 at ¶9; Dkt. No. 42 at ¶5.

On October 20, 2016, Larson saw the plaintiff. Dkt. No. 32 at ¶11; Dkt. No. 42 at ¶6. Larson noted the plaintiff's history of shoulder pain dating back to 2006, four to five cortisone injections and a joint separation to the left shoulder in 2012. Dkt. No. 32 at ¶12; Dkt. No. 42 at ¶7. Larson examined the plaintiff and noted decreased range of motion, no "crepitus" (meaning no popping, clicking or cracking sound in the joint), no deformity and positive radial pulse. Dkt. No. 32 at ¶13. During the appointment, Larson noted the plaintiff's vital signs and that he had throbbing pain in his left shoulder that occasionally radiated down his arm. Id. at ¶14. On a pain intensity scale of 1-10, the plaintiff reported pain from 7 to 10+. Id. Larson also noted that the plaintiff was on Naproxen (which is a non-steroidal anti-inflammatory drug (NSAID)), muscle rub and capsaicin cream. Id. NSAID medications are prescribed for acute and chronic conditions for inflammation and pain. Id. Larson added Acetaminophen, along with the plaintiff's already-prescribed Naproxen, and recommended that he continue physical therapy exercises. Id. at ¶15; Dkt. No. 42 at ¶9.

The plaintiff had a chronic (long-term) shoulder issue, not an acute issue. Dkt. No. 32 at ¶18. Larson says that the plaintiff did not request a lower bunk restriction during his October 20, 2016 appointment, id. at ¶19, while the plaintiff says that he did make such a request, dkt. no. 40 at ¶11. Larson

requested that the plaintiff be scheduled with an advance care provider within fourteen days. Dkt. No. 32 at ¶22; Dkt. No. 42 ¶10.

B.  The Plaintiff's October 27, 2016 Appointment with Dr. Manlove

On October 27, 2016, Dr. Jeffrey Manlove (not a defendants) saw the plaintiff for his left shoulder pain, observing good passive range of motion, but finding that the plaintiff could not actively elevate his arm greater than 80-90 degrees, which is about half the normal range. Id. at ¶25; Dkt. No. 42 at ¶12. Manlove assessed chronic left shoulder pain and ordered an MRI. Dkt. No. 32 at ¶25; Dkt. No. 42 at ¶12.

C.  The Plaintiff's November 19, 2016 HSR

On November 19, 2016, the plaintiff submitted an HSR stating, "I'm awaiting an MRI on my 'L' shoulder. The pain is unbearable. Tylenol/Naproxen inefficient. And climbing to the top bunk is a chore at this point. I can barely lift a cup at times. Please speed up process." Dkt. No. 42 at ¶13. The written response from the HSU states, "MRI scheduled for next month, soonest date available" and it is signed by staff member "D. Gerlach-Shower." Dkt. No. 40-2 at 6.

D.  The Plaintiff's December 12, 2016 Visit with Nurse Block

On December 2, 2016, the plaintiff submitted an HSR stating, "I'm sorry, but I've hit bottom with my left shoulder. I understand there is an MRI scheduled, and I am trying to be patient. But in the meantime I need a.) a sling b.) Bottom bunk restriction and c.) something to manage the pain. It feels like it slips in & out of place. Thank you." Dkt. No. 33-1 at 96. Ten days later, on

4

December 12, 2016, Block saw the plaintiff in response to the HSR. Dkt. No. 32 at ¶33; Dkt. No. 42 at ¶15.

During this appointment, the plaintiff complained of his left shoulder pain. Dkt. No. 32 at ¶34; Dkt. No. 42 at ¶16. He told Block that he believed his shoulder problems began ten years prior and that there was no obvious injury at the onset. Dkt. No. 32 at ¶34. (The plaintiff says that he told Block that he thought the problem may have originated from sports and weight-lifting. Dkt. No. 40 at ¶16.) The plaintiff stated that it felt like his shoulder was popping out of place without any movement. Dkt. No. 32 at ¶34; Dkt. No. 42 at ¶16. Regarding his left arm, there was slight "pop" with range of motion. Dkt. No. 32 at ¶35. Block noted that the passive range of motion was intact with no separation of joint, warmth, bruising, swelling of shoulder or guarding of left arm. Id. Block did not see any acute injury that would show deformity of his arm or shoulder, or any swelling, bruising, redness or warmth. Id. ¶36. Block did not note any non-verbal pain, which would include guarding, grimacing, rubbing the area, groaning, restlessness (unable to sit still or rocking), or elevated vital signs. Dkt. No. 32 ¶35. None of these symptoms existed at the time. Id. Block noted "musculoskeletal pain" and, under Nursing Diagnoses, she noted "Altered Comfort." Dkt. No. 42 ¶18. The plaintiff indicates that he told Block climbing down from the top bunk was hurting his shoulder, dkt. no. 40 at ¶16, and says that he asked Block for a bottom bunk, dkt. no. 40 at ¶20.

The parties dispute whether the plaintiff told Block he was doing push-ups and other exercises. According to the defendants, the plaintiff told Block he

5

was still doing pushups and arm workouts daily. Dkt. No. 32 at ¶38. Block's understanding was that if he could do such strenuous exercise, he did not need a lower bunk restriction. Id. at ¶43. According to the plaintiff, he was incapable of doing push-ups or anything strenuous involving his shoulder. Dkt. No. 42 at ¶22. He states that he never told Block that he was doing push-ups. Id. at ¶23.

During the appointment, Block observed that the plaintiff had a pending MRI that had been ordered in October 2016, and a prescription for Naproxen. Dkt. No. 32 at ¶40. Block ordered muscle rub, provided the plaintiff with a sling, and directed that he see an advanced care provider in the next fourteen days. Id. at ¶¶40-41. Block explained to the plaintiff that he could not do strenuous exercise and instructed him to use the sling until he saw the provider. Id. at ¶42. She told him to use the sling only when he was outside the cell, and that he shouldn't be using it when he was in the cell because she wanted him to keep using his arm so that the shoulder did not freeze from lack of use/movement. Id.; Dkt. No. 42 at ¶19. Block also instructed the plaintiff to use muscle rub and a hot washcloth for moist heat, and to do gentle stretch and range of motion exercises, but not to push beyond the pain threshold. Dkt. No. 32 at ¶44. Block says that the plaintiff expressed understanding of the instructions provided and agreed with the plan of care. Id.

Block noted to follow up with "MD" after the MRI and to schedule the plaintiff for an appointment with an advance care provider within fourteen days. Dkt. No. 32 at ¶45. She also noted that follow up with nursing was not

6

necessary, and that the patient was advised to submit an HSR if there was no improvement. Id. Block saw the plaintiff only during the December 12, 2016 appointment. Id. at ¶46.

Block says that as a nursing professional, she made her decisions regarding the plaintiff's care and treatment based on her observations, her assessment of the plaintiff's behavior, physical condition and vital signs and on her professional medical judgment. Dkt. No. 32 at ¶49. She says that had the plaintiff exhibited signs of acute injury such as visible signs of pain, swelling, redness, bruising, warmth, or obvious deformity, she would have issued a lower bunk restriction for a temporary period. Id. at ¶50. Since the plaintiff had a scheduled MRI, an upcoming MD appointment, was on medication like Naproxen and was doing vigorous exercises, Block says that she didn't see any immediate medical necessity to issue a lower bunk restriction. Id. at ¶51.

The plaintiff states that Block refused his written and verbal requests for a bottom bunk restriction. Dkt. No. 40 at ¶¶20-21. According to the defendants, the plaintiff's issue at that time was chronic, not acute, and did not qualify him for the bottom bunk restriction. Dkt. No. 32 at ¶43.

E.  The Plaintiff's MRI and Follow Up

On December 14, 2016, the plaintiff had his MRI. Dkt. No. 32 at ¶47; Dkt. No. 42 at ¶24. On January 11, 2017, Manlove saw the plaintiff for his left shoulder pain. Dkt. No. 32 at ¶48. He reviewed the MRI, which showed tendinosis and an incomplete tear of supraspinatus tendon, and he assessed partial RTC tear of the left shoulder. Id. Manlove referred the plaintiff to an

7

orthopedic specialist, Dr. Grossman. Id. at ¶48; Dkt. No. 42 ¶27. The plaintiff subsequently underwent shoulder surgery and has had a full recovery. Dkt. No. 32 at ¶54; Dkt. No. 42 at ¶32.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

1. *Parties' Arguments*

The defendants contend that the plaintiff's claim fails as a matter of law because he cannot prove that the defendants were deliberately indifferent to his shoulder pain. Dkt. No. 30 at 7. The defendants argue that the plaintiff did not meet the criteria for a low-bunk restriction and that they provided him with appropriate care. Id.

The plaintiff first concedes that he does not believe he can prove deliberate indifference against Larson. Dkt. No. 39 at 1. But he does believe that he can prove deliberate indifference against Block. Id. According to the plaintiff, he has evidence to prove that Block was deliberately indifferent to his should injury and pain. Id. at 4. He argues that he did qualify for a bottom bunk restriction due to significant functional limitations and musculoskeletal pain. Id. The plaintiff states that when Block provided him a sling for his injured shoulder, she "had disregarded his safety and was blatantly inappropriate to think, (with an injury significant enough to warrant the use of a sling) he wouldn't suffer further pain while having to ascend and descend from the top bunk." Id. at 4-5.

2. *Analysis*

"The Eighth Amendment's proscription against 'unnecessary and wanton infliction of pain' is violated when prison officials demonstrate 'deliberate

indifference to serious medical needs' of prisoners—whether the indifference 'is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care.'" Lewis v. McLean, 864 F.3d 556, 562 (7th Cir. 2017) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A deliberate indifference claim contains both an objective and a subjective component. "[A] prisoner must first establish that his medical condition is 'objectively, sufficiently serious,' and second, that prison officials acted with a 'sufficiently culpable state of mind'—i.e., that they both knew of and disregarded an excessive risk to inmate health." Id. at 562-63 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "To determine if a prison official acted with deliberate indifference, [courts] look into his or her subjective state of mind." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996)). "[S]howing negligence is not enough." Id. (citing Estelle, 429 U.S. at 106). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim." Id. (citing Farmer, 511 U.S. at 836-38). "[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." Id. (citing Farmer, 511 U.S. at 837).

"Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment, or are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Cesal

v. Moats, 851 F.3d 714, 721 (7th Cir. 2017) (quoting Estelle, 429 U.S. at 104-105).

The defendants have not argued that the plaintiff's shoulder condition was not an objectively serious medical need, and the court finds that it was. See id. Because the plaintiff concedes that he cannot show that Larson acted with deliberate indifference, the only question for summary judgment is whether a reasonable fact finder could conclude that Block's decision not to give the plaintiff a lower bunk restriction amounted to deliberate indifference.

Block had the authority to provide a temporary lower bunk restriction in the case of acute injury or postoperative. She also had the authority to authorize a temporary lower bunk restriction for an inmate suffering from acute injury, significant functional limitations in mobility secondary to arthritis, musculoskeletal disorders or neurological disorders, significant symptomatic cardiovascular disease, obesity with significant mobility issues present, elderly, postoperative, seizure diagnoses, pregnancy or blindness.

At the plaintiff's December 12, 2016 appointment with Block, the plaintiff told Block about his shoulder pain, described the history of his shoulder pain, and said that it felt like it was popping in and out of place. Block examined the plaintiff, and did not notice nonverbal signs of pain or acute injury. She did note that the plaintiff was scheduled for an MRI and that he had a prescription for Naproxen. Block provided the plaintiff with a sling, ordered muscle rub, and directed that he be seen by an advanced care provider within fourteen days. Block instructed the plaintiff to use the sling until his provider appointment

and directed him on how and when to use it. Block also instructed the plaintiff on using the muscle rub and a hot washcloth for moist heat, and she gave him gentle stretch and range of motion exercises. She explained to the plaintiff that he should not do strenuous exercises. (The parties dispute whether the plaintiff was doing exercises in his cell; this dispute is not material to the question of whether Block violated the Eighth Amendment by declining to give the plaintiff a lower bunk restriction.)

Block did not authorize the lower bunk restriction because she didn't see an immediate medical necessity for one. The plaintiff argues that Block minimized his pain and that a reasonable medical provider would not have issued a sling and then denied a lower bunk restriction. In other words, the plaintiff disagrees with Block's medical judgment. A mere disagreement with medical judgment does not amount to deliberate indifference. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005) (citing Estelle, 429 U.S. at 106). Block did not disregard the plaintiff's condition; she treated it, by providing a sling and muscle rub and by directing that he receive an appointment with an advanced care provider within fourteen days. Block determined that the plaintiff's condition was chronic, not acute, and that he did not qualify for a bottom bunk restriction.

"[T]he Eighth Amendment does not reach disputes concerning the exercise of a professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another." Cesal, 851 F.3d at 721 (citing Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996)). Even if there

12

was evidence that the defendant was negligent, or committed malpractice, in choosing not to allow the lower bunk restriction, "[d]eliberate indifference is not medical malpractice . . . ." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). The plaintiff has not raised a genuine issue of material fact as to whether Block and Larson were deliberately indifferent to his serious medical need, and the court will grant summary judgment in favor of the defendants.

## III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment and will enter judgment accordingly. Dkt. No. 29.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty (30) days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight (28) days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of January, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**